UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GANG SONG,

    Plaintiff,

v.

CASE NO. 06-14073
HON. LAWRENCE P. ZATKOFF

PAMELA TURNER, CHARLOTTE
BUSH, and CITY OF DETROIT

    Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Detroit,
State of Michigan, on the 31st day of March, 2008.

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendants' filing titled "Motion for Summary Judgment" (Docket #18). Although titled a "Motion for Summary Judgment," the Court notes that Defendants present a number of arguments that Plaintiff's action should be dismissed on the pleadings. Those arguments thus must be considered under Fed.R.Civ.P. 12, not Fed.R.Civ.P. 56. In any event, Plaintiff filed a response, and Defendants have replied. The Court finds that the facts and legal arguments pertinent to Defendants' Motion are adequately presented in the parties' papers, and the decision process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that Defendants' Motion be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, Defendants' Motion is GRANTED.

1

## II. BACKGROUND

Plaintiff, an Asian national of Korean descent, has been employed by the City of Detroit Water and Sewage Department (the "Department") since 1990. Prior to 1995, Plaintiff's title was "Associate Civil Engineer - Design." In 1995, Plaintiff was promoted to "Senior Associate Civil Engineer - Design." In 1998, Plaintiff was promoted to "Water & Wastewater Systems Maintenance Engineer," and he held that position until May 2006. In the spring of 2006, the Department underwent a reduction in force due to a budget shortfall within Defendant City of Detroit (the "City"). As a result, the Department demoted or laid off over 130 employees. Plaintiff, a non-union employee, was one of employees who was demoted to a previously held position. By written notice dated April 13, 2006, the Department informed Plaintiff that his position as Water & Wastewater Systems Maintenance Engineer had "been reached for layoff." The Department gave Plaintiff the option of being laid off or accepting "A Demotion or Transfer to the formerly held class of Sr. Assoc. Civil Engr[,]" with an effective date of May 8, 2006. Plaintiff selected the option of demotion to the position of Senior Associate Civil Engineer on April 21, 2006.

On April 26, 2006, Plaintiff filed a grievance through the City's Civil Service Rules. Plaintiff alleged that he was improperly demoted in violation of the City's Human Resources Rules, specifically Rule 10, which covers "Reductions in Force." For purposes of this action, the key provision is Section 2, Paragraph b, which provides:

> b.  In the event it is necessary to reduce the number of permanent status employees in the class, the order of removal shall be as follows:
>
> > 1.  Employees in the class on a limited-term basis and employees in the class on a permanent basis who have not completed the required probationary period, but who hold permanent status in some other class, shall revert to the class in the department from which they were promoted or transferred. Removal shall be in accordance with their total City seniority, the least senior employee to be removed first.

2.  Employees in the class on a permanent basis shall be removed in accordance with their total City seniority, the least senior employee to be removed first. Such employees shall be laid off subject to the following demotion or transfer rights within the department.

    a.  Demotion in Series

        If the employee is in a class in an occupational series, the employee shall have the right to be demoted to a position in a lower class in the series, provided that there are one or more employees in the lower class in the department having less total city seniority. (The least senior employee displaced as a result shall be subject to demotion, transfer or layoff in accordance with the applicable provisions of this Rule.)

    b.  Demotion or Transfer to a Formerly-Held Class

        If the employee previously held permanent status in another class not in series which is at the same or lower level, the employee may elect demotion or transfer to such class, provided there are one or more employees in the class in the department having less total city seniority. (The least senior employee displaced as a result shall be subject to demotion, transfer or layoff in accordance with the applicable provisions of this Rule.)

    c.  Change of Status to Vacant Positions in Other Classes

        If the employee has exhausted his/her rights to demotion or transfer under (a) and (b) above, the department may, in so far as the interests of the service permit, propose transfer or demotion of the employee to an available vacant position in any other class in the department for which the department believes the employee is qualified. Such proposed change of status shall be subject to the approval of the Human Resources Director.

Plaintiff's grievance was processed, and a hearing was conducted before a hearing officer, John Obee ("Mr. Obee"), agreed upon by Plaintiff and the City. Plaintiff was given an opportunity to present his case and any evidence in support of his case at that hearing. Plaintiff's grievance was denied by Mr. Obee in January 2007. In March 2007, Plaintiff was

3

notified that Mr. Obee's conclusion and findings of fact had been adopted by the Civil Service Commission of the City's Human Resources Department (the "Commission").

In addition to the above grievance, Plaintiff filed a charge with the Equal Employment Opportunity Commission on May 25, 2006, wherein he alleged race discrimination and retaliation. Plaintiff was issued a right to sue letter in August or early September 2006. On September 15, 2006, Plaintiff, proceeding in pro per, filed the instant action in this Court, alleging that the City, Pamela Turner ("Turner") and Charlotte Bush ("Bush") (a) discriminated against him on the basis of race when demoting him, and (b) demoted him in retaliation for his complaints about racially preferential treatment Turner had received and/or engaged in during the decade preceding Plaintiff's demotion.

### III. LEGAL STANDARD

**A.     Fed.R.Civ.P. 12**

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of the plaintiff's complaint. The Court must accept as true all factual allegations in the complaint, and any ambiguities must be resolved in the plaintiff's favor. *Jackson v. Richards Medical Co.*, 961 F.2d 575, 577 (6th Cir. 1992). A district court's grant of a motion to dismiss is proper when there is no set of facts that would allow the plaintiff to recover. *Carter by Carter v. Cornwall*, 983 F.2d 52, 54 (6th Cir. 1993).

**B.     Fed.R.Civ.P. 56**

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings, combined with any affidavits in support show that no genuine issue as to any material fact remains and that the moving party is entitled to a

judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)(citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV. ANALYSIS

### A. No Dismissal on the Pleadings

In their Motion, Defendants set forth several reasons why they believe this case should be dismissed on the pleadings. The Court rejects such arguments, however, for two reasons. First, this case was filed 18 months ago. An answer was filed, a scheduling conference was

5

held and discovery was conducted. During that period, Defendants never (1) raised the issue of the failure of Plaintiff to adequately plead his case, (2) filed a motion for a more definite statement of the allegations set forth in the complaint pursuant to Fed.R.Civ. P. 12(e) (Plaintiff, initially proceeding in pro per, completed a form "Eastern District of Michigan Complaint and Motion for Other Relief" (the "Form Complaint")), or (3) demanded that an amended and clear complaint be filed (even after Plaintiff hired an attorney).

Second, and more importantly, the pleadings in this matter were filed by a *pro se* plaintiff. As such, the pleadings are to be construed liberally. *See Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). Significantly, Paragraph 1 of the Form Complaint states:

> This action is brought pursuant to Title VII of the Civil Rights Act of 1964 (as amended by the Equal Employment Opportunity Act of 1972) for employment discrimination. Jurisdiction is specifically conferred on this Court under 42 U.S.C. § 2000e-5. Equitable and other relief are also sought under 42 U.S.C. § 2003-5(g).

Further, in the Form Complaint, Plaintiff (1) indicated that he had filed charges with the Equal Opportunity Commission and obtained a right to sue letter, (2) stated that he believed he was discriminated against on the basis of race because of his demotion and the demotion was in retaliation for complaining about discriminatory treatment within the Department, and (3) attached a 15 page document describing the acts which he believed demonstrated racial discrimination and retaliation. Accordingly, contrary to Defendants' assertions, the Court concludes that:

    a.    The Court has subject matter jurisdiction over this matter, as a federal question was pled in the Form Complaint, as evidenced above;

    b.    Defendants' discussion of diversity jurisdiction is misplaced in this Title VII action; and

    c.    Plaintiff did not fail to state a claim upon which relief can be granted.

The Court now turns to Defendants' assertions that Plaintiff's case should be dismissed on

summary judgment pursuant to Fed.R.Civ.P. 56.

**B.    Race Discrimination Claim**

Pursuant to Title VII, 42 U.S.C. § 2000e-2(a)(1), Plaintiff claims that Defendants discriminated against him on the basis of race when demoting him in 2006.

*1.    Standard for Discrimination Claims*

In deciding a motion for summary judgment, Plaintiff's discrimination claims are to be evaluated under the *McDonnell-Douglas/Burdine*[1] formula, discussed below. It is the plaintiff's burden to establish a prima facie case of discrimination, and a plaintiff must establish discriminatory animus was a motivating factor in the employer's action. *Jacklyn v. Schering-Plough Healthcare Prod. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999) A claim of discrimination can be established either by direct evidence of discrimination or circumstantial evidence creating an inference of discrimination. *Id.*

*2.    Direct Evidence*

Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *See Jacklyn*, 176 F.3d at 926 (citations omitted); *See also Sniecinski v. BCBSM*, 469 Mich. 124, 133 (2003) (quoting *Hazle v. Ford Motor Co.*, 464 Mich. 456, 462 (2001)). Moreover,

> [direct evidence] does not require the fact finder to draw any inferences to reach that conclusion. . . . For example, proof of "a facially discriminatory employment policy or a corporate decision maker's express statement of a desire to [avoid hiring] employees in the protected group is evidence of discriminatory intent." . . . Evidence of discrimination is not considered direct evidence unless a racial motivation is explicitly expressed.

*Amini v. Oberlin College*, 440 F.3d, 359 (6th Cir. 2006) (citations omitted). In his brief,

---

[1]*McDonnell-Douglas v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981).

Plaintiff does not explicitly direct the Court's attention to any particular statement which constitutes direct evidence of race discrimination. After reviewing the record in this case, the Court finds that there are no allegedly discriminatory statements made by Turner, Bush or any person employed by the City). Plaintiff also fails to direct the Court to any policy of the City, and the Court's scouring of the record uncovered no policy of the City, that expressed a desire by the City to demote, layoff, or avoid hiring persons in the protected class to which Plaintiff claims to belong (Asian/Korean).

Accordingly, the Court concludes that Plaintiff has not offered any direct evidence that Defendants demoted him on the basis of his race.

### 3. *Circumstantial Evidence*

In the absence of direct evidence of discrimination, a plaintiff must proceed through the steps set forth in *McDonnell-Douglas v. Green*, 411 U.S. 792, 802 (1973). Under *McDonnell-Douglas*, a plaintiff can proceed upon presenting evidence from which a factfinder could infer that the plaintiff was the victim of unlawful discrimination. *See Hazle*, 464 Mich. at 462; *DeBrow v. Century 21 Great Lakes, Inc. (on reh.)*, 463 Mich. 534, 537-38 (2001). Under this circumstantial evidence approach, a plaintiff can establish a *prima facie* case of discrimination by showing that:

(1) he was a member of a protected class;
(2) he suffered an adverse employment action;
(3) he was qualified for the position; and
(4) he was treated differently from similarly situated persons outside the protected class.

*See, e.g., Anthony v. BTR Auto. Seal. Syst.*, 339 F.3d 506, 515 (6th Cir. 2003)*; Jacklyn,* 176 F.3d at 928. *See also Reeves v. Sanderson Plumb. Prod., Inc.,* 530 U.S. 133, 143 (2000).

"The establishment of a *prima facie* case creates a rebuttable presumption of discrimination and requires [the employer] to articulate some legitimate, nondiscriminatory

8

reason for taking the challenged action." *Anthony*, 339 F.3d at 515. "If the defendant can respond with such a reason for the adverse employment action, the plaintiff has the burden of offering evidence that the defendant's justification is a pretext that masks its true discriminatory intent." *Amini*, 440 F.3d at 359-60; *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003) (en banc). A plaintiff may establish pretext "by showing that the [defendant's] proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Wexler*, 317 F.3d at 576 (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)).

   *4. Race Claim*

   There is no dispute that Plaintiff satisfies the first three prongs of the four-part *prima facie* showing required under *McDonnell-Douglas* and its progeny. Plaintiff was a member of a protected class (Asian/Korean), and he suffered an adverse employment action (demotion). Likewise, Defendants do not contest that Plaintiff was qualified for the position he held prior to the demotion (Water & Wastewater Systems Maintenance Engineer). Defendant argues, however, that there is no evidence to support the fourth prong under *McDonnell-Douglas* and its progeny, *i.e.*, that Plaintiff was treated differently than similarly situated persons not in the protected class. The Court agrees.

  Plaintiff argues that he was "double demoted" in contravention of Rule 10 of the Human Resources Rules, while "a comparable non-Asian employee with less seniority was demoted only one grade, a violation of Title VII of the Civil Rights Act." In support of that argument, Plaintiff states that M.A. Matthew was demoted only one level, from Senior Associate Electrical Engineer to Senior Assistant Electrical Engineer, despite the fact that Plaintiff had more seniority than Mr. Matthew (Mr. Matthew was hired in 1997, seven years

9

after Plaintiff). Plaintiff states that Mr. Matthew is a different race than Plaintiff. Plaintiff does not identify Mr. Matthew's race, stating only that Mr. Matthew was an "American national." The Court was unable to discern Mr. Matthew's race in any document filed in this matter. For purposes of this Opinion, however, the Court shall assume that Mr. Matthew is of a different race than Plaintiff.

The Court cannot conclude, however, that the record supports Plaintiff's claim that Plaintiff was "double demoted" or demoted two levels. Rather, just like Mr. Matthew, Plaintiff was demoted to the immediately available level below that which he was working at the time of the reduction in force.[2] In the case of Plaintiff, he was demoted from Water and Wastewater Systems Maintenance Engineer to Senior Associate Civil Engineer - Design. This demotion, from Water and Wastewater Systems Maintenance Engineer to Senior Associate Civil Engineer - Design, is clearly set forth in (a) Exhibit 2 to Plaintiff's Response (Plaintiff's Employee History File dated June 29, 2006), which is also Exhibit 1 to Defendants' Motion, (b) Exhibit 8 to Defendants' Motion (the April 13, 2006 Notice of Reduction in Force Rights), and (c) the grievance procedure and hearing documentation attached to Defendants' Motion (specifically, Exhibit 5).

Even the document Plaintiff relies on to demonstrate that he was double demoted reveals that he was not demoted two levels as he claims. The DWSD (Detroit Water and Sewer Department) Internal Spreadsheet is attached to Plaintiff's Response as Exhibit 4 and

---

[2]Based on a review of Exhibit 10 to Defendants' Motion (Exhibit 4 to Plaintiff's Response), which is titled "DWSD Internal Spreadsheet," it appears to the Court that Mr. Matthew actually may have been demoted two levels. According to that document, Mr. Matthew's most recent position prior to being Senior Associate Electrical Engineer was Associate Electrical Engineer. It is unclear from the DWSD Internal Spreadsheet whether the Associate Electrical Engineer position still existed at the time of the 2006 reduction in force, but it is clear that no one else was put in that position during the reduction in force and that the one employee who was in that position at the time of the reduction in force was laid off. In any event, it is clear that Mr. Matthew was demoted at least one available level, just as Plaintiff was.

Defendants' Motion as Exhibit 10. The DWSD Internal Spreadsheet is dated April 27, 2006, and it reveals that (1) Plaintiff's then-current classification was "Water & Wastewater Systems Maintenance Engineer", (2) Plaintiff's "Previous Class[ification] Held [was] Sr. Assoc Civl Eng Design, Assoc Civil Engr Design," and (3) the "Action Taken" with respect to Plaintiff pursuant to the reduction in force was to "Demote [Plaintiff to] Sr. Assoc. Civil Eng. Design[.]" Significantly, the DWSD Internal Spreadsheet further provides that Plaintiff's demotion would displace employee Mohammed Hasnain, such that Mr. Hasnain would be demoted from "Sr. Assoc. Civ. Eng. Design" (the position to which Plaintiff was demoted) to "Assoc. Civil Eng. - Design[.]" Accordingly, it was Mr. Hasnain, not Plaintiff, who was demoted to Associate Civil Engineer - Design. Plaintiff was simply demoted one level, to Senior Associate Civil Engineer. Finally, as the DWSD Internal Spreadsheet reveals, more than 130 employees were being demoted or laid off in the spring of 2006, in the same manner that Plaintiff was.

Plaintiff next asserts that Section 2.b.2.a. of Rule 10 (and not Section 2.b.2.b.) should have governed his situation because the positions of Water & Wastewater Systems Maintenance Engineer and Senior Associate Civil Engineer - Design are in the same occupational series, with the latter position constituting a two level demotion from the former position. Plaintiff argues that there is an intermediate position in that occupational series continuum, *i.e.*, the position of Engineer of Water Systems. Plaintiff offers no evidence in support of his contention that the Senior Associate Civil Engineer - Design position and the two Water Systems Engineer positions were in the same occupational series. Even if all three positions were in the same occupational series, however, Plaintiff ignores (a) the fact that no one was placed in the position of Engineer of Water Systems during the restructuring under the reduction in force, (b) his acknowledgment at the grievance hearing before Mr.

11

Obee that Plaintiff could not have bumped the persons, if any, who held Engineer of Water Systems positions, and (c) the fact that Plaintiff never held the position of Engineer of Water Systems (which inexplicably means that Plaintiff jumped from Senior Associate Civil Engineer - Design to Water & Wastewater Systems Maintenance Engineer in 1998). The Court therefore finds that this argument lacks merit.

There are no other allegations, nor is there any other "evidence" in the record, that non-Asian persons were treated differently than Plaintiff. At page 13 of the document he attached to the Form Complaint, Plaintiff states that "only two (me and Mr. B.H., both were reporting to Ms. Turner) among all non-union engineers in the Department were demoted or laid off . . ." This allegation, like the others presented by Plaintiff, fails to demonstrate that his race had anything to do with his demotion. On page 13 of the document he attached to the Form Complaint, Plaintiff also states that "Status Change Approval, dated May 15, 2006, demoting me to a previously held classification, noted that the reason for my demotion was Lack of Work or Lack of Funds (Reason Code 251). This reason makes no sense for the following reasons from (a) to (g)." The Court notes that none of the reasons (a) - (g) set forth by Plaintiff identify any person other than Turner (as decision maker) or a Ms. Joshi (for whom he used to do work). At no point in the Form Complaint, the document attached thereto, or in Plaintiff's formal response briefs (or even in Plaintiff's *pro se* submissions (*see* Section IV.C., *infra*)) is there any indication of how Asians were treated differently than non-Asians. Specifically, Plaintiff does not show that non-Asians were spared similar demotions or lay offs pursuant to the reduction in force action taken by the Department and/or the City.

Plaintiff also makes frequent references to how union employees (as opposed to Plaintiff, a non-union employee) were able to successfully challenge the reduction in force demotions and/or lay-offs. In conjunction with such arguments, however, Plaintiff does not

contend that the union employees were of a different race than he was. Therefore, even if union employees were successful in challenging demotions while non-union employees such as Plaintiff were not, such disparate treatment does not implicate or support a claim of racial discrimination.

Accordingly, for the reasons set forth above, the Court concludes that Plaintiff has not established a *prima facie* case of race discrimination. The Court therefore grants Defendants' Motion as it relates to Plaintiff's race discrimination claim.

**C.    Retaliation Claim**

In order to establish a claim of retaliation under Title VII:

> A plaintiff must now prove that: (1) [he] engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment. . . . If and when a plaintiff has established a *prima facie* case, the burden of production of evidence shifts to the employer to "articulate some legitimate, nondiscriminatory reasons" for its actions. . . . The plaintiff, who bears the burden of persuasion throughout the entire process, then must demonstrate "that the proffered reason was not the true reason for the employment decision."

*Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 792-93 (6th Cir. 2000).

Plaintiff has satisfied the first three elements for a *prima facie* retaliation claim, at least for purposes of surviving summary judgment when all evidence must be construed in his favor. In the document he attached to the Form Complaint, Plaintiff repeatedly referenced instances where he publicly complained that (1) Turner received "extraordinary racial preferential treatment," including getting an undeserved promotion and being given a City car, and (2) Turner had taken hostile and adverse actions against Plaintiff over the years for work and non-work matters, including his career advancement even prior to the

13

demotion.  The Court notes that Defendant has not disputed any of these contentions.
Therefore, in construing the evidence in a light most favorable to Plaintiff in deciding this
Motion, *see Matsushita, supra*, the Court concludes that Plaintiff engaged in protected
activity when he complained of discriminatory treatment in favor of and by his supervisor,
Turner.  *See, e.g.*, *Burkhardt v. BCBSM*, 1999 WL 33455100, at *1; *Ross v. Memphis*, 394
F.Supp.2d 1024, 1034 (W.D. Tenn. 2005).

The protected activity was known to Defendants, as it is not disputed that (1) Plaintiff wrote a letter to the City Human Resources Department Director in 2000 about allegedly racially preferential treatment in promotions, (2) Plaintiff spoke to Turner in 2004 about allegedly improper use of City cars, and (3) multiple incidents concerning Plaintiff having the ability to report to Ms. Joshi (rather than Turner) were communicated to and/or involved Turner in 2004.  Again, Defendants do not dispute Plaintiff's contentions that his protected activity was known to them.  Finally, Plaintiff clearly suffered an adverse employment action when he was demoted in 2006.  The issue for the Court, therefore, is whether Plaintiff can satisfy the fourth prong of a *prima facie* Title VII retaliation case, *i.e.,* is there evidence of a causal connection between the protected activity and Plaintiff's termination?  For the reasons that follow, the Court concludes there is no evidence of causal connection that can be inferred in this case.

As set forth above, the Court concluded that Plaintiff engaged in protected activity by complaining that Turner received preferential racial treatment and engaged in discriminatory activity.  Plaintiff has not, however, offered any evidence that his demotion was tied to his complaints.  First, there has been no evidence presented which would demonstrate that Plaintiff's demotion was the result of anything other than a Department-wide reduction in force due to budget shortfalls within the City.  Second, it is undisputed that approximately

130 other Department employees were laid off, displaced and/or demoted. As such, Plainitff was not singled out for adverse employment action and, if fact, many persons were laid off rather than simply demoted.

Third, there is no evidence that would suggest that Turner (or anyone else) demoted Plaintiff, or advocated the demotion of Plaintiff, because of any complaints he made in the past. Finally, all of the incidents referenced by Plaintiff occurred more than a year before the Department's reduction in force plan was announced and implemented in the spring of 2006. As such, there is no temporal proximity of the alleged incidents upon which a retaliation claim might be based to Plaintiff's demotion. *See Little v. BP Explorations & Oil Co.*, 265 F.3d 357, 364 (6th Cir. 2001); *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000); *Cooper v. City of N. Olmstead*, 795 F.2d 1265, 1272 (6th Cir. 1986).

Accordingly, for the reasons stated, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

**D. Miscellaneous**

The Court notes that subsequent to the reply brief filed by Defendants, the named Plaintiff mailed five separate documents directly to the Court (collectively, the "*Pro se* submissions"), copying only his counsel on the first two submissions (the second submission was filed the day after the first submission and essentially corrected typos in the first submission) and copying his counsel and Defendants' counsel on the last three submissions. The Court has not received any comment from either counsel with respect to the *Pro se* submissions. The Court has reviewed the *Pro se* submissions and notes that, even if considered by the Court, they have no effect on the Court's analysis set forth above.

Absent consent of the Court, however, a party is not entitled to file a response to a reply filed by the other party. *See* Fed.R.Civ.P. 7; E.D. Mich. L.R. 7.1(a), (b) and (c)(1)(A).

15

In addition, Plaintiff is represented by counsel in this matter, and it is improper for a plaintiff to make *pro se* filings when represented by counsel. Accordingly, Plaintiff's *pro se* submissions filed after Plaintiff retained counsel are hereby declined by the Court. Finally, the Court hereby ORDERS the named Plaintiff, Gang Song, to refrain from filing any additional materials on a *pro se* basis so long as he is represented by counsel.

## V. CONCLUSION

Accordingly, and for the reasons set forth above, the Court hereby GRANTS Defendant's Motion for Summary Judgment. Judgment shall be entered accordingly.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: March 31, 2008

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 31, 2008.

s/Marie E. Verlinde
Case Manager
(810) 984-3290